1
2
3
4
5
6
7

**FILED**
CLERK, U.S. DISTRICT COURT

Nov 13, 2014

CENTRAL DISTRICT OF CALIFORNIA
BY: _____PMC_____ DEPUTY

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10

11   JOEL D. JOSEPH,                    )    CASE NO. 2:14-cv-06899-SVW
                                        )    (MANx)
12          Plaintiff,                  )
                                        )    ORDER GRANTING DEFENDANTS
13      v.                              )    APOTEX'S AND COSTCO'S
                                        )    MOTIONS TO DISMISS
14   COSTCO WHOLESALE                   )    [17, 19] AND DENYING APOTEX'S
     CORPORATION and APOTEX             )    MOTION TO STRIKE DEMAND FOR
15   CORPORATION,                       )    DAMAGES [16]
            Defendants.                 )
16                                      )
                                        )
17   _____)

18   **I.    INTRODUCTION**[1]

19          Plaintiff Joel D. Joseph ("Joseph") filed this self-styled "private attorney general action"

20   after buying a container of prescription drugs that was not marked with the drugs' country of

21   origin.  Joseph claims that he understood the absence of a country-of-origin label as a

22   representation that the drugs were made in the United States—which they were not.  On August

23   1, 2014, Plaintiff filed suit pro se against defendants Costco Wholesale Corporation ("Costco")

24   and Apotex Corporation ("Apotex") in California State Court.  On September 4, 2014, Apotex

25   removed the case to this Court.  Joseph's First Amended Complaint ("FAC") asserts three claims

26   under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*,

27   _____

28   [1]  Upon review of the parties' briefs, the Court concludes that the Motion is suitable for
     determination without oral argument.  Fed. R. Civ. P. 78(b); Local Rule 7-15.

and one claim under California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.* (Dkt. 14.)

Presently before the Court are Apotex's and Costco's motions to dismiss Joseph's FAC, (Dkts. 17 & 19), and Apotex's motion to strike the demand for damages (Dkt. 16.). For the reasons set forth below, the Court GRANTS Apotex's and Costco's motions to dismiss and DENIES Apotex's motion to strike the demand for damages.

## II.    FACTUAL BACKGROUND

Joseph founded and chairs the Made in the USA Foundation—a non-profit organization that promotes American-made products. (FAC ¶ 7.) For many years, Joseph purchased the prescription drug Lipitor from Costco. (FAC ¶ 4.) Sometime after a generic version of Lipitor—called atorvastatin—became available in 2012, Costco filled Joseph's prescription with Apotex's atorvastatin. (FAC ¶¶ 6, 8.) Joseph inspected the "Apotex atorvastatin container" and did not find a country of origin label on it. (FAC ¶ 9.) Because Joseph believes that all imported products must be marked with a country of origin, he concluded that the unmarked atorvastatin was made in the United States. (*Id.*)

Thus, although Joseph wanted to buy American atorvastatin, he actually purchased foreign-made atorvastatin for an undisclosed sum.[2] (FAC ¶¶ 16–18, 23.) He presumably learned of this discrepancy when, on an undisclosed date, Costco's pharmacist told Joseph that "the atorvastatin was made in India." (FAC ¶ 23.)

Joseph asserts that on April 1, 2014, the U.S. Food and Drug Administration ("FDA") published a report that Apotex's Bangalore, India factory failed its inspection. (FAC ¶ 20). On May 5, 2014, the FDA purportedly published an import alert banning Apotex's atorvastatin. (FAC ¶ 19.) Joseph claims he notified Costco that Apotex's atorvastatin was banned by the FDA in April and May 2014. (FAC ¶ 22.) Nevertheless, Costco continued selling Apotex atorvastatin. (FAC ¶ 24.)

## III.    ANALYSIS

---

[2] While the parties dispute the atorvastatin's country of origin, it is undisputed that the atorvastatin at issue was not made in the United States.

2

**A.**     **Legal Standard for a Motion to Dismiss Under Rule 12(b)(6)**

Federal Rule of Civil Procedure 8 requires plaintiffs to "plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Flores v. EMC Mortg. Co.*, — F. Supp. 2d —, No. CV F 14–0047 LJO GSA, 2014 WL 641097, at *4 (E.D. Cal. Feb. 18, 2014) (quoting *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000)). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d). The pleading must give fair notice of the claim asserted and the grounds on which it rests. *Flores*, 2014 WL 641097, at *4 (quoting *Yamaguchi v. United States Dep't of Air Force*, 109 F.3d 1475, 1481) (9th Cir. 1997)).

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. Fed. R. Civ. Proc. 12(b)(6). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Allegations in the complaint, together with reasonable inferences therefrom, are assumed to be true for purposes of the motion." *Odom v. Microsoft Corp*, 486 F.3d 541, 545 (9th Cir. 2007). Courts evaluating a motion to dismiss a pro se plaintiff's complaint liberally construe the complaint. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

If a court dismisses the complaint, it will grant leave to amend unless futile. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

**B.**     **Joseph's Standing to Bring UCL and FAL Claims**

Joseph asserts claims under California's UCL and FAL. A plaintiff has standing to bring a claim under the UCL or FAL only if he suffered an injury-in-fact and lost money or property as a result of the complained-of conduct. Cal. Bus. & Prof. Code § 17204; *Birdsong v. Apple, Inc* ,

d, 959-960 (9th Cir. 2009); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 986 (S.D. Cal. 2014) (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 322 (Cal.2011)).  In other words, the plaintiff must allege not only that he suffered an economic injury, but that the defendant's complained-of conduct was an immediate cause of his injury. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 n.1 (9th Cir. 2011) (citing *In re Tobacco II Cases*, 46 Cal.4th 298, 93 (2009)).

Joseph does not claim he would not have purchased Apotex atorvastatin but for the alleged misrepresentation.  Instead, Joseph asserts that the "general public" did not know that Apotex atorvastatin is foreign-made and purchased it at "higher retail prices than would have been paid for foreign-made products."  (FAC ¶ 15.)  However, Joseph does not allege that he personally paid a higher retail price for Apotex atorvastatin than he would have but for the alleged misrepresentation.  Joseph also fails to allege the price he paid for Apotex atorvastatin and whether he paid the retail price or a co-payment determined by his insurance company.  Given that atorvastatin is a prescription drug, it is more than plausible that Joseph paid a co-payment rather than the retail price.  If so, then the price that Joseph paid would not be affected by the alleged misrepresentation.[3]  Thus, Joseph fails to plead an economic injury.

Even if the Court charitably construes Joseph's complaint as asserting that he personally paid an inflated retail price for Apotex atorvastatin, he still fails to satisfy § 17204's causation requirement.[4]  First, Joseph fails to plead any facts indicating that Defendants' conduct caused this purported economic injury.  Instead, he simply makes the bald assertion that many consumers believe that "Made in the U.S.A." products are of higher quality than imported products.  (FAC ¶ 15.)

Second, Joseph's argument relies on a fraud on the market theory—that the alleged

---

[3]  The only price-related numerical data that Joseph alleges is that on May 23, 2014, he purchased Lipitor (the brand name drug) for $235.56 and that "[a]torvastatin sells for more than 90% less at Costco than Lipitor."  (FAC ¶ 25.)  This statement is insufficient to indicate that Joseph personally overpaid for Apotex atorvastatin because of the alleged misrepresentation.

[4]  Although Joseph's UCL claims rely on a different legal theory, each asserts the same injury—that because Defendants improperly failed to indicate a country of origin on containers of Apotex atorvastatin, its price was artificially inflated.  Joseph's FAL claim asserts the same injury. Accordingly, the Court's analysis applies equally to all of Joseph's claims.

4

misrepresentation inflated Apotex atorvastatin's market price. *See In re POM Wonderful LLC*, No. ML 10-02199 DDP RZX, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014). A fraud on the market theory may only be asserted where there is an efficient market for the product at issue. *Id.* ("Frauds on the market are only possible in efficient markets, where the price of (in most cases) a stock is determined by openly disseminated information about a business."). Prices in an efficient market absorb publicly available information and vary as new information is released. *See id.* In contrast, prices in the prescription drug market are not determined by publicly available information. *See Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1337 (S.D. Fla. 2007). Moreover, there is no open market for prescription drugs, which by definition may only be purchased by consumers whose doctors prescribe the drugs to them. Additionally, many of those consumers pay only a contractually-set insurance co-payment that does not vary with available information and that does not vary between different manufacturers of the same generic drug. *See id.*; *see also* (Def. Apotex's Mem. P. & A. Mot. to Dismiss 14.) Thus, Joseph's assertion that Defendants' alleged representation that Apotex atorvastatin was made in the United States caused him to pay a higher price is not plausible. Any causal connection between Defendants' conduct and Joseph's harm is simply too far attenuated to satisfy § 17204. *See Prohias*, 485 F. Supp 2d at 1337–38 (dismissing plaintiffs' consumer fraud claims alleging that defendant's misrepresentations caused them to pay more for Lipitor than they would have otherwise because the claimed injury was overly speculative).

For the aforementioned reasons, Joseph fails to plead standing to assert any of his UCL claims or his FAL claim. Nevertheless, the Court cannot say that amendment would be futile. The Court therefore DISMISSES these claims without prejudice.

### C.   Joseph's UCL Claims

Even if Joseph adequately alleges standing, he still fails to state a claim under the UCL. Joseph asserts three claims under California's UCL—a claim for fraudulent business practices, a claim for unlawful business practices, and a claim for unfair business practices.

### 1.   Legal Standard

The UCL's purpose is "to protect both consumers and competitors by promoting fair

competition in commercial markets for goods and services." *Kasky v. Nike, Inc.* , 27 Cal. 4th 939, 949 (2002).  The statute defines unfair competition to mean and include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law, § 17500 *et seq.* ]."  Cal. Bus. & Prof. Code § 17200.  A business practice need only meet one of the three criteria—unlawful, unfair or fraudulent—to be considered unfair competition.  *McKell*, 142 Cal. App. 4th at 1470-71.  Further, the "unlawful" prong of the UCL borrows from other state and federal statutes; thus, an unlawful business act within the meaning of the UCL includes "anything that can be properly called a business practice and that at the same time is forbidden by law." *Id.* at 1474 (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co*, 20 Cal. 4th 163, 180 (1999)).        The standard for determining whether a business practice is "unfair" is currently unsettled.  *Yanting Zhang v. Superior Court*, 57 Cal. 4th 364, 380 n.9 (2013).  The California Supreme Court recently described four competing standards applied by  appellate courts, but expressly declined to resolve the split.  *Id.*  In *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1192 (Cal. Ct. App. 2012), the court found that a plaintiff claiming a violation of the "unfair" prong must establish that "the public policy which is a predicate to the action [is] 'tethered' to specific constitutional, statutory or regulatory provisions."  *Id.*  In *Ticconi v. Blue Shield of California Life & Health Ins. Co.*, 160 Cal. App. 4th 528, 539 (Cal. Ct. App. 2008), the court applied a balancing test and examined whether "the practice offends an established public policy or [whether] the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Id.* (quoting *Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App .4th 700, 718–719) (internal quotation marks omitted).  In *Camacho v. Auto. Club of S. California*, 142 Cal. App. 4th 1394, 1403 (Cal. Ct. App. 2006), the court found that to establish a claim under the "unfair" prong, the consumer injury must be substantial and neither "outweighed by any countervailing benefits to consumers or competition" nor reasonably avoidable by consumers.  *Id.*  Finally, in *Progressive W. Ins. Co. v. Yolo Cnty. Superior Court*, 135 Cal. App. 4th 263, 285 (Cal. Ct. App. 2005), the court balanced the complained-of practice's impact on the victim against the alleged wrongdoer's reasons, justifications, and motives.  *Id.*

2.      Application

a.      Fraudulent Business Practices

*(1)     Legal Standard*

Where a claim alleges a course of fraudulent conduct as its basis, the claim is said to be "grounded in fraud" and must satisfy Rule 9(b).  *Vess v. Ciba-Giegy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003).  Thus, a claim brought under the "fraudulent" prong of the UCL must satisfy Rule 9(b)'s particularity requirements.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

To satisfy Rule 9(b), the complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements."  *In re GlenFed Inc. Sec. Litig.*, 42 F.3d 1541, 1548 n.7 (9th Cir. 1994) (en banc).  In all, the plaintiff must provide a "substantial amount of particularized information about the plaintiff's claim in order to enable [the defendant] to understand it and effectively prepare a response pleading and an overall defense of the actions."  5A Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1296 (3d ed. 2004).  Additionally, "when suing more than one defendant, a plaintiff cannot merely lump multiple defendants together but rather must differentiate the allegations and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  *TRC & Associates v. NuScience Corp.*, No. 2:13-CV-6903-ODW CWX, 2013 WL 6073004, at *2 (C.D. Cal. Nov. 18, 2013) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir.2007)) (internal quotation marks omitted).

*(2)     Application*

Joseph bases his claim under the UCL's "fraudulent" prong on Defendants' alleged failure to designate a country of origin on an atorvastatin container.  Joseph does not specify the date on which he purchased the offending container.  He does not specify which Costco location provided the offending container.[5]  Joseph's only description of the offending container is that it

---

[5]   Nevertheless, the Court can infer that he purchased it at the same location from which he states he purchased the brand-name version of the drug for many years.  (FAC ¶ 4.)

was "the Apotex atorvastatin container" and that it did not have a country of origin label on it. (FAC ¶ 9.)  He neither attaches a picture of the container to the complaint nor describes its physical appearance.  Joseph does not state whether the container was the container that he received from the pharmacist or a bulk container from which the pharmacist took pills to fill individual prescriptions.  Finally, Joseph does not state whether Costco or Apotex produced and labeled the container.  Even liberally read, Joseph's conclusory complaint fails to adequately notify Defendants of the particulars of his claim.

For the aforementioned reasons, Joseph fails to state a claim under the "fraudulent" prong of the UCL.

b.     <u>Unlawful Business Practices</u>

Joseph's "unlawful" UCL claim is premised on the Tariff Act of 1930, 19 U.S.C. § 1304, and California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*

*(1)    CLRA*

The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  As with claims under the "fraudulent" prong of the UCL, a plaintiff asserting a CLRA claim based on a misrepresentation must satisfy Rule 9(b)'s particularity requirement.  *Kearns*, 567 F.3d at 1125. For the same reasons that Joseph fails to state a claim under the UCL's "fraudulent" prong, he fails to state a claim under its unlawful prong premised on Defendants' violation of the CLRA.

*(2)    19 U.S.C. § 1304*

*(a)    Legal Standard*

The Tariff Act of 1930 generally requires that imported items be marked with their country of origin.  19 U.S.C. § 1304.  Section 1304(3)(J) establishes an exception to the marking requirement for items enumerated on a list established by the Secretary of the Treasury (the "J-List").  19 U.S.C. § 1304(3)(J).  Under the Act's implementing regulations, J-List items include drugs imported at pills or capsules.  19 C.F.R. § 134.33.  If a J-List item is imported in a container, "the outermost container in which the article ordinarily reaches the ultimate purchaser

8

is required to be marked to indicate the origin of its contents[.]" *Id.* However, if a J-List item is intended to be repacked for sale to the ultimate purchaser by an entity other than the importer, then the importer is not required to mark the container with the articles' country of origin. 19 C.F.R. § 134.25. Instead, the importer is required to certify its compliance with the regulations to the port director and to notify the repacker of the requirement that imported articles or their containers be marked to indicate to ultimate purchasers the articles' country of origin. 19 C.F.R. §§ 134.25(a) &(d).

*(b)     Application*

Read liberally, Joseph's complaint asserts that he purchased atorvastatin manufactured by Apotex in India. (FAC ¶¶ 8–9, 16–23.) However, Joseph fails to allege who imported the atorvastatin at issue. He also fails to allege whether the atorvastatin at issue was imported in containers intended to be sold to the ultimate purchaser or whether it was intended to be repacked. If the atorvastatin was intended to be repacked, Joseph fails to identify the repacker. Joseph also fails to allege whether the container that he inspected was the container in which the atorvastatin was imported or a different container in which it was repacked. These failures are significant given that the Tariff Act and its implementing regulations impose different requirements on: (1) drugs imported in a container intended to reach the ultimate purchaser, (2) drugs imported and intended to be repacked by the importer, and (3) drugs imported and intended to be repacked by someone other than the importer. In sum, Joseph fails to allege sufficient facts to even establish which federal regulation applies to the atorvastatin at issue—let alone that either defendant violated the Tariff Act and its implementing regulations.

Thus, even assuming the dubious proposition that a California UCL claim can be based on a violation of a federal statute and its federal implementing regulations,[6] Joseph fails to state sufficient facts to establish such a claim for relief.

c.     Unfair Business Practices

Joseph alleges that Defendants engaged in unfair business practices by implying that

---

[6] Although the Court does not reach Apotex's preemption argument, it notes that it has substantial concerns that any claim under the UCL's unlawful prong that is premised on a violation of 19 U.S.C. § 1304 or its implementing regulations would be preempted.

Apotex atorvastatin was "'Made in the U.S.A.' when it was actually made in India, or contained ingredients from India."  (FAC ¶ 33.)  As noted above, Joseph fails to allege which defendant (if any) produced the offending container or whether the offending container was offered for sale to ultimate purchasers, such as Joseph.

While the Court reads Joseph's complaint liberally, it cannot invent facts where none are even implied.  Thus, Joseph's claim fails under any of the four competing standards for determining whether a business practice is "unfair" under the UCL.

For the aforementioned reasons, even if Joseph satisfied the UCL's standing requirement, he would still fail to state a claim for relief under the UCL.

### D.  Joseph's False Advertising Law Claim

Like his claim under the UCL's "fraudulent" prong, Joseph's FAL claim sounds in fraud. It thus must satisfy Rule 9(b)'s particularity requirement. *Apodaca v. Whirlpool Corp.*, No. SACV 13-00725 JVS, 2013 WL 6477821, at *5 (C.D. Cal. Nov. 8, 2013).

Joseph's FAL claim is based on the same facts as his claim under the UCL's "fraudulent" prong and suffers from the same deficiencies.  Joseph's FAL claim thus fails for the same reasons as his UCL "fraudulent" practice claim.  Thus, even if Joseph satisfied the FAL's standing requirement, he would still fail to state a claim under the FAL.[7]

## IV.  ORDER

1.  For the foregoing reasons, Apotex's and Costco's motions to dismiss are GRANTED.

2.  Because the Court cannot say that amendment would be futile, the complaint is DISMISSED WITHOUT PREJUDICE.  Joseph shall have leave to file an amended complaint within 30 days of this Order's issuance.

3.  For the foregoing reasons, Apotex's motion to strike Joseph's damages prayer is DENIED as moot.

**IT IS SO ORDERED.**

---

[7]  In light of the Court's holding dismissing Joseph's complaint, the Court DENIES Apotex's motion to strike Joseph's damages prayer as moot.  Nevertheless, the Court notes that even if the motion were not moot, Rule 12(f) does not authorize courts to strike damages claims on the ground that they are precluded as a matter of law.  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010).

1

2    Dated: November 13, 2014

3                                                    _____
                                                     STEPHEN V. WILSON
4                                                    United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28